UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

RACHEAL M. EDWARDS,                )
                                   )
          Plaintiff,               )
                                   )
     vs.                           )     Case No. 2:18 CV87 ACL
                                   )
ANDREW M. SAUL,[1]                 )
Commissioner of Social Security    )
Administration,                    )
                                   )
          Defendant.               )

**MEMORANDUM**

Plaintiff Racheal M. Edwards brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the Social Security Administration Commissioner's denial of her applications

for Disability Insurance Benefits under Title II of the Social Security Act and Supplemental

Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite Edwards' severe impairments,

she was not disabled as she had the residual functional capacity ("RFC") to perform work

existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with

consent of the parties, pursuant to 28 U.S.C. § 636(c).   A summary of the entire record is

presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be reversed and

---

[1]After this case was filed, a new Commissioner of Social Security was confirmed.   Pursuant to
Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Deputy
Commissioner Nancy A. Berryhill as the defendant in this suit.

remanded.

## I. Procedural History

Edwards filed her applications for benefits on October 6, 2015, claiming that she became unable to work on November 1, 2009. (Tr. 121, 208-09, 217-25.) She subsequently amended her alleged onset of disability date to March 20, 2014, one day after a decision on a previous application for benefits. (Tr. 38.) In her Disability Report, Edwards alleged disability due to fibromyalgia, generalized osteoarthritis from head to toe, attention deficit disorder ("ADD"), degenerative joint and disc disease in the spine, and cervical spondylosis. (Tr. 252.) Edwards was 39 years of age at her alleged onset of disability date. (Tr. 26.) Her applications were denied initially. (Tr. 123-27, 128-32.) Edwards' claim was denied by an ALJ on January 23, 2018. (Tr. 15-28.) On August 24, 2018, the Appeals Council denied Edwards' claim for review. (Tr. 1-4.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Edwards raises the following claims: (1) "The ALJ erred in failing to give controlling weight to treating doctor, Dr. Zimmerman's opinion," and (2) "The ALJ's RFC is not supported by any medical opinion and he impermissibly drew on his own inferences from the medical record." (Doc. 12 at pp. 8, 10.)

## II. The ALJ's Determination

The ALJ first found that Edwards last met the insured status requirements of the Act on December 31, 2014.[2] (Tr. 17.) He next found that Edwards did not engage in substantial

---

[2]To be entitled to benefits under Title II, Edwards must demonstrate she was disabled prior to December 31, 2014. *See* 20 C.F.R. § 404.130.

gainful activity since her alleged onset date of March 20, 2014.   *Id.*   The ALJ concluded that

Edwards had the following severe impairments: degenerative disc disease, degenerative joint

disease, osteoarthritis, fibromyalgia, headaches, depression, and anxiety.   *Id.*   The ALJ found

that Edwards did not have an impairment or combination of impairments that met or medically

equaled the severity of one of the listed impairments.   (Tr. 18.)

As to Edwards' RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned
> finds that the claimant has the residual functional capacity to
> perform sedentary work as defined in 20 CFR 404.1567(a) and
> 416.967(a) in that she can lift ten pounds occasionally and five
> pounds frequently.   She can stand and/or walk for two hours out
> of an eight-hour workday.   She can sit for six hours out of an
> eight-hour workday.   However, she cannot climb or balance.   She
> can occasionally stoop.   She cannot kneel, crouch, or crawl.   She
> can frequently reach, handle, finger, and feel.   She would need to
> avoid moderate exposure to extreme cold, extreme heat, high
> humidity, smoke, fumes, dust, and gases.   She must avoid hazards
> such as dangerous machinery and unprotected heights.   She can
> perform simple, routine tasks throughout the workday, in an
> occupation that does not require her to communicate with the
> general public.

(Tr. 20.)

The ALJ found that Edwards was unable to perform any past relevant work, but was

capable of performing other jobs existing in significant numbers in the national economy, such

as address clerk, document preparer, and table worker.   (Tr. 26-27.)   The ALJ therefore

concluded that Edwards was not under a disability, as defined in the Social Security Act, at any

time from March 20, 2014, through the date of the ALJ's decision.   (Tr. 27.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability
> insurance benefits protectively filed on October 6, 2015, the

claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act.

Based on the application for supplemental security income protectively filed on October 6, 2015, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 28.)

## III.   Applicable Law

### III.A.  Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.   42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).   Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion.   *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).   This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."   *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).   "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis."   *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1.      The credibility findings made by the ALJ.

2.      The plaintiff's vocational factors.

3.      The medical evidence from treating and consulting physicians.

4.      The plaintiff's subjective complaints relating to exertional and

non-exertional activities and impairments.

5.     Any corroboration by third parties of the plaintiff's
       impairments.

6.     The testimony of vocational experts when required which is
       based upon a proper hypothetical question which sets forth the
       claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal

citations omitted).   The Court must also consider any evidence which fairly detracts from the

Commissioner's decision.   *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050

(8th Cir. 1999).   However, even though two inconsistent conclusions may be drawn from the

evidence, the Commissioner's findings may still be supported by substantial evidence on the

record as a whole.   *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v.

Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).   "[I]f there is substantial evidence on the record as

a whole, we must affirm the administrative decision, even if the record could also have supported

an opposite decision."   *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal

quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974,

977 (8th Cir. 2003).

**III.B.  Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

result in death or that has lasted or can be expected to last for a continuous period of not less than

twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.   A claimant

has a disability when the claimant is "not only unable to do his previous work but cannot,

considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v.*

*Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.   If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.   20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4).   "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations."   *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. § 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id.*   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is

other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must

determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

Edwards first argues that the ALJ erred in failing to assign controlling weight to treating physician Dale Zimmerman, D.O.

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians." *Estes v. Barnhart,* 275 F.3d 722, 725 (8th Cir. 2002) (internal quotation marks and citation omitted). "The opinion of a treating physician is accorded special deference under the social security regulations."[3] *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000). The opinions and findings of the plaintiff's treating physician are entitled to "controlling weight" if that opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" *Id.* (quoting 20 C.F.R. § 404.1527(d)(2)). According to the regulations, the opinions of treating medical sources are given more weight because they are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's impairments and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical

---

[3]This continues to be true for Edwards' claim because it was filed before March 27, 2017. *Combs v. Berryhill*, 868 F.3d 704, 709 (8th Cir. 2017); 20 C.F.R. § 404.1527 ("For claims filed...before March 27, 2017, the rules in this section apply"); § 404.1527(c)(1) ("Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you").

findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. 20 C.F.R. § 404.1527(c)(2). Similarly, more weight is given to examining sources than to nonexamining sources. 20 C.F.R. § 404.1572(c)(1).

"Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel,* 239 F.3d 958, 961 (8th Cir. 2001). An ALJ may "discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Prosch,* 201 F.3d at 1013 (internal quotation marks and citations omitted); *Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006) (holding that an ALJ may give a treating doctor's opinion limited weight if it is inconsistent with the record). An ALJ is entitled to give less weight to the opinion of a treating doctor where the doctor's opinion is based largely on the plaintiff's subjective complaints rather than on objective medical evidence. *Kirby v. Astrue,* 500 F.3d 705, 709 (8th Cir. 2007) (citing *Vandenboom v. Barnhart,* 421 F.3d 745, 749 (8th Cir. 2005)). Whether the ALJ grants a treating physician's opinion substantial or little weight, the ALJ must "always give good reasons" for the particular weight given to a treating physician's evaluation. 20 C.F.R § 404.1527(d)(2).

On March 27, 2017, Dr. Zimmerman completed a Medical Source Statement of Ability to do Work-Related Activities (Physical). (Tr. 541-44.) Dr. Zimmerman expressed the opinion that Edwards could lift no more than ten pounds; stand or walk about two hours in an eight-hour workday; and sit about four hours in an eight-hour workday. (Tr. 541.) Edwards must alternate between sitting, standing, and walking to relieve discomfort, and she could only sit or stand for sixty minutes before she would need to walk around for ten minutes. *Id.* She would

also need to lie down at unpredictable intervals during an eight-hour workday. *Id.* Dr.

Zimmerman found that Edwards could never climb ladders, and could only occasionally twist,

stoop, crouch, or climb stairs. (Tr. 542.) Additionally, Edwards could never push or pull, and

could occasionally reach, handle, finger, and feel. *Id.* Dr. Zimmerman indicated that Edwards

should avoid moderate exposure to extreme temperatures, high humidity, and fumes, odors, or

gases; and should avoid concentrated exposure to perfumes, soldering flues, solvents, and

chemicals. (Tr. 543.) Dr. Zimmerman found that Edwards would be absent from work due to

her impairments about two days per month; was likely to be off task due to her symptoms twenty

percent of the workday; and would need to take unscheduled breaks one to two times a week due

to pain, muscle weakness, and fatigue. (Tr. 543-44.)

 The ALJ found that Dr. Zimmerman's statement was "partially persuasive in that it was

issued by a treating physician with a longitudinal understanding of the claimant's ability to

function." (Tr. 25.) He stated that portions of Dr. Zimmerman's statement are inconsistent

with the severity of Edwards' allegations. *Id.* For example, the ALJ stated that there was no

support that Edwards' attention and concentration were so limited, and no support that Edwards

would require excessive breaks and absences. *Id.* The ALJ concluded that Edwards'

"progressively conservative pattern of treatment and relative stability militate against the

presence of some of Dr. Zimmerman's more restrictive limitations." *Id.* He indicated that he

was therefore assigning "partial weight" to Dr. Zimmerman's opinions. *Id.*

 The undersigned finds that the ALJ's decision to discount Dr. Zimmerman's opinions is

not supported by substantial evidence on the record as a whole. Dr. Zimmerman is Edwards'

long-time treating physician. The current record contains treatment notes from Dr. Zimmerman

beginning in January 2014 through the date of the ALJ's decision. (Tr. 480-512, 541-45, 1069-

1103.)   It appears that Dr. Zimmerman has been treating Edwards for a much longer period, however, as Dr. Zimmerman authored a Medical Source Statement on March 28, 2011, in connection with Edwards' previous application for benefits.   (Tr. 82.)   The current record reveals Edwards sought treatment from Dr. Zimmerman on a regular basis during the relevant period, approximately monthly, for her various chronic and acute conditions.

The ALJ found that Edwards had the following severe impairments: degenerative disc disease, degenerative joint disease, osteoarthritis, fibromyalgia, headaches, depression, and anxiety.   (Tr. 17.)   With regard to Edwards' physical impairments,[4] the record reveals Edwards has abnormalities in her lumbar and cervical spine, shoulders, knees, ankle, wrists, and hands. The ALJ summarized the medical evidence supporting these impairments, including the numerous surgical procedures Edwards underwent.   In February 2014, Edwards underwent a right knee debridement.   (Tr. 21, 324.)   In April 2015, Edwards underwent a cervical discectomy with fusion of C5-C6, based on a finding of severe degenerative disc disease with thecal sac compression and bilateral foraminal stenosis.   (Tr. 21, 413.)   Edwards underwent corrective surgery on her right ankle in September 2016.   (Tr. 22, 561.)   As to her lumbar spine, Edwards had a herniated disc at L4-L5 with radiculopathy, for which she underwent regular epidural steroid injections in 2016.   (Tr. 22, 839.)   She reported that the epidural steroid injections provided only temporary pain relief.   (Tr. 834.)   Edwards received median branch blocks for her lumbar back pain (Tr. 787) as well as her cervical pain (Tr. 803, 805) in 2017. She also underwent radiofrequency ablation for her lumbar facet arthropathy.   (Tr. 761.) Edwards underwent a right hand and thumb surgical procedure on January 12, 2015.   (Tr. 23, 340.)

---

[4]Edwards does not challenge the ALJ's findings with regard to her mental limitations.

The ALJ stated that Edwards received lengthy treatment for her back, knee, and ankle impairments "which became progressively more conservative with time," thereby supporting an ability to perform a sedentary range of work. (Tr. 22.) With regard to Edwards' hand impairment, the ALJ cited a May 2015 examination revealing essentially normal findings. (Tr. 23, 325.) He acknowledged that there was some evidence of osteoarthritis in Edwards' wrists and hands, yet pointed out that hand injections have been effective at managing her pain. (Tr. 23.) The undersigned disagrees that Edwards received treatment for her orthopedic impairments that can be characterized as "conservative." Edwards underwent multiple surgeries and consistently receives pain treatment including medication, epidural steroid injections, medial branch blocks, and radiofrequency ablation. Nothing in the medical evidence summarized by the ALJ is inconsistent with any of Dr. Zimmerman's findings. Similarly, Edwards' one normal hand examination is not inconsistent with the presence of hand limitations resulting from Edwards' osteoarthritis and related pain.

In addition to these orthopedic impairments, Edwards suffers from fibromyalgia. The ALJ found that Edwards' fibromyalgia "is not as limiting as alleged." *Id.* In support of this finding, he stated that Edwards sought treatment for her fibromyalgia from a rheumatologist only quarterly, and was only prescribed medication. *Id.* He stated that, although the presence of 12/18 tender points was noted by her rheumatologist (Tr. 961, 975, 998, 1025, 1051, 1066, 1109), there was no worsening of this condition such as an increase in the number of tender points, during the relevant period.

The ALJ's discussion of Edwards' fibromyalgia does not support his finding that the disease was not limiting. The lack of any need for surgery does not detract from the severity of the disease, because the American College of Rheumatology ("ACR") does not recommend

surgery for fibromyalgia.   *Brosnahan v. Barnhart*, 336 F.3d 671, 677 (8th Cir. 2003).   Further,

"the only known treatment for fibromyalgia consists of conservative treatments to include

exercise, local heat, stress management, drugs to improve sleep, and analgesics."   *Watkins v.

Colvin*, No. CIV. 13-2088, 2014 WL 3547017, at *3 (W.D. Ark. July 17, 2014).   Similarly, the

presence of 12/18 tender points, rather than a higher number of tender points, is no indication of

how the disease limits Edwards in a work setting, especially when considering her combination

of impairments.

Dr. Zimmerman regularly stated in his summary of Edwards' history that she has a

"chronic pain condition," with gradually worsening low back pain.   (Tr. 487.)   He noted that

Edwards' back pain is located in the lower back transversely and radiates to the lateral aspects of

the left leg.   *Id.*   The back pain is aggravated by bending, twisting, lifting, sitting, standing and

walking.   *Id.*   Upon examination, Dr. Zimmerman[5] consistently noted back tenderness and

swelling; decreased range of motion and crepitus of the right knee; decreased range of motion of

the right ankle; and a gait that was either painful with difficulty walking, or slow, cautious, and

stiff.   (Tr. 489, 485, 481, 569, 577, 582, 590, 594, 598, 602, 606, 610, 614, 617, 621, 625, 629,

637, 640, 644, 648, 651, 656, 674, 678, 1094.)   Dr. Zimmerman prescribed pain medication for

Edwards' various impairments and administered injections for Edwards' back and neck pain.

*Id.*

Dr. Zimmerman was the only treating provider who rendered an opinion regarding

Edwards' limitations.   He has been Edwards' treating physician since prior to 2014, and has a

substantial treatment history with Edwards, which includes regular follow-up appointments,

---

[5]Edwards also saw Luvell Glanton, Jr., M.D., a pain management specialist in Dr. Zimmerman's
practice, for the administration of injections.   Some of the cited treatment notes are those of Dr.
Glanton.

diagnostic testing and lab work, and pain management.   Dr. Zimmerman was also aware of

Edwards' treatment with various specialists and her receipt of emergency room care for pain.

He completed his medical source statement in March 2017, after Edwards had undergone her

orthopedic surgeries.   Given the length and nature of his treatment history with Edwards, Dr.

Zimmerman was in the best position to render an opinion as to Edwards' limitations.   Dr.

Zimmerman's opinions are supported by his own records, and there is no contradictory evidence

from other examining physicians.   Thus, it was error for the ALJ to reject Dr. Zimmerman's

opinions based on perceived "conservative pattern of treatment and relative stability."   (Tr. 25.)

An ALJ may not substitute his own opinions for the opinions of medical professionals.   *Ness v.*

*Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990); *see also Pate-Fires v. Astrue*, 564 F.3d 935, 946-47

(8th Cir. 1995) (ALJ may not "play doctor").

      With regard to Edwards' RFC, the ALJ concluded that she could perform a range of

sedentary work with postural limitations of an inability to climb, balance, kneel, crouch, or

crawl; occasionally stoop; manipulative limitations of frequently reaching, handling, fingering,

and feeling; and environmental limitations of avoiding moderate exposure to extreme cold

extreme heat, high humidity, smoke, fumes, dust, and gases; and avoiding hazards such as

dangerous machinery and unprotected heights.   (Tr. 20.)   Edwards argues that the ALJ's RFC

determination is not supported by any medical opinion, and lacks the support of substantial

evidence.

      RFC is defined as "what [the claimant] can still do" despite her "physical or mental

limitations."   20 C.F.R. § 404.1545(a).   "When determining whether a claimant can engage in

substantial employment, an ALJ must consider the combination of the claimant's mental and

physical impairments."   *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001).   The ALJ must

determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of her limitations. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)).

"Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). In determining "whether a claimant has the residual functional capacity necessary to be able to work [an ALJ must] look to whether she has 'the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.'" *Forehand v. Barnhart*, 364 F.3d 984, 988 (8th Cir. 2004) (citing *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir. 1982)). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Id.*

The ALJ stated that his RFC assessment was supported "by the objective medical evidence contained in the record," which did not "consistently support the claimant's allegations of disabling physical and mental pain and limitations." (Tr. 26.) As previously discussed, the ALJ erred in rejecting the opinions of treating physician Dr. Zimmerman. Dr. Zimmerman found that Edwards had greater work-related limitations due to her combination of impairments. Specifically, the ALJ did not include the following limitations found by Dr. Zimmerman: Edwards must alternate between sitting, standing, and walking to relieve discomfort; she could only sit or stand for sixty minutes before she would need to walk around for ten minutes; she would need to lie down at unpredictable intervals during the workday; she could never push or pull, and could only occasionally reach, handle, finger, and feel; she would be absent from work

due to her impairments about two days per month; she was likely to be off task due to her symptoms twenty percent of the workday; and she would need to take unscheduled breaks one to two times a week due to pain, muscle weakness, and fatigue. (Tr. 543-44.)

Although it is not necessary that an RFC finding be supported by a specific medical opinion, the ALJ did not cite to any evidence in support of his determination. Further, the ALJ did not point to any inconsistencies between Edwards' allegations of disabling pain and limitations and her reported daily activities. Edwards has multiple impairments, several of which required surgical procedures, and seeks frequent care consisting of pain medication, injections, and radiofrequency ablation. An "ALJ's reliance on ... his own beliefs as to what the medical evidence should show do[es] not constitute substantial evidence" to support a conclusion that a claimant is not disabled. *Fowler v. Bowen*, 866 F.2d 249, 252 (8th Cir. 1989).

Thus, the ALJ's RFC determination is not supported by substantial evidence. "Where the total record convincingly establishes disability and further hearing would delay the receipt of benefits, this court has ordered the immediate award of benefits without further delay." *Blakeman v. Astrue*, 509 F.3d 878, 890 (8th Cir. 2007). However, that standard has not been met here. Thus, the Court will reverse and remand the Commissioner's decision.

## Conclusion

Based on the foregoing, the Court finds that the Commissioner's decision is not supported by substantial evidence on the record as a whole. Upon remand, the Commissioner should accord the proper weight to Dr. Zimmerman's opinions and formulate a new RFC that is supported by substantial evidence. The Commissioner should obtain additional medical evidence regarding Edwards' functional limitations, if necessary, by either requesting information from Edwards' treating providers or obtaining consultative examinations.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 11th day of February, 2020.